UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| KELLY O. individually and on behalf of B.O., and B.O. | ) ) ) ) | Case No.: 3:26-cv-533 |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | **COMPLAINT** |
| CIGNA HEALTH AND LIFE INSURANCE COMPANY; POPULATION SERVICE INTERNATIONAL; POPULATION SERVICE INTERNATIONAL OPEN ACCESS PLUS MEDICAL BENEFITS PLAN. | ) ) ) ) ) ) ) | |
| Defendants. | | |

Plaintiffs Kelly O. and B.O, through their undersigned counsel, complain and allege against Defendants Cigna Health and Life Insurance Co.; Population Service International; and Population Service International Open Access Plus Medical Benefits Plan as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.      Kelly O. and B.O. are residents of Maryland.  Kelly O. is B.O.'s mother.

3.      Cigna Health and Life Insurance Company ("Cigna") is an insurance company headquartered in Bloomfield, Connecticut.

4.      Population Service International was at all times relevant hereto Kelly O.'s employer and is headquartered in Washington DC.

5.      Through her employment, Kelly O. was at all times relevant hereto a participant in the Defendant Population Service International Open Access Plus Medical Benefits Plan (the "Plan."). B.O. was a dependent and a beneficiary under the Plan.

6.      The Plan is a fully insured plan under 29 U.S.C. § 1001 *et. seq.*, the Employee Retirement Income Security Act.

7.      Population Service International is the Plan Administrator.

8.      Cigna is the insurer for the Plan, and was delegated by the Plan Administrator with the authority to review claims under the Plan, and acted as a Plan fiduciary under ERISA, including with respect to coverage and appeal decisions related to B.O.'s care at issue.

9.      With respect to the claims at issue in this action, Cigna acted in part through its subsidiary, Evernorth Behavioral Health ("Evernorth"), which processed mental health claims for Plan participants.

10.     At all relevant times, Cigna acted as the agents for the Plan and the Plan Administrator for processing claims, communicating with the Plan participants and beneficiaries about the status of their claims, and providing relevant documents, records, and other information as ERISA's claims procedure regulations define those terms.

11.     Plan participants and beneficiaries were told that Cigna was the entity to which they were to submit claims, request documents and other information, and otherwise communicate about their benefits under the Plan.

12.     This lawsuit is brought to obtain an order requiring the Defendants to pay or reimburse expenses incurred during B.O.'s treatment at Wingate Wilderness Therapy ("Wingate"), for which Plaintiffs made claims under the Plan that Cigna denied.

13.     The remedies Plaintiffs seek under ERISA and the Plan are for benefits due under the terms of the Plan pursuant to 29 U.S.C. § 1132(a)(1)(B); and alternatively, for appropriate equitable relief under 29 U.S.C. § 1132(a)(3) based on Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"); as well as an award of pre-judgment

interest, and award of fees and costs as allowed by 29 U.S.C. § 1132(g). Plaintiffs do not seek double recovery.

14.     This Court has jurisdiction over this case under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

15.     Venue is appropriate under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(c) based on ERISA's provisions regarding nationwide service of process and venue, and because Cigna is located in Connecticut.

## FACTUAL ALLEGATIONS[1]

16.     B.O. received mental health and substance abuse treatment at Wingate from April 13, 2023 to July 5, 2023.

17.     B.O. was fifteen years of age (15) at the time of treatment.

18.     B.O. started out-patient therapy at a young age to help deal with emotional regulation but starting in late 2022, B.O.'s symptoms worsened, with increasing unsafe behaviors and instances of self-harm.

19.     B.O. was diagnosed with the following mental health illnesses: attachment disorder, generalized anxiety disorder, and major depressive disorder. B.O. also suffered from substance use issues.

20.     On April 13, 2023, B.O. was admitted to Wingate.

21.     Wingate was located in Kanab, Utah and is a 24/7 outdoor behavioral health treatment facility that was licensed by the Utah Department of Human Services to provide outdoor behavioral health services to adolescents.

---

[1] These facts are drawn from Plaintiffs' appeal letters to Cigna as part of Cigna's internal appeals process. These letters, and the entire Administrative Record, are incorporated herein.

22.    Wingate provided intermediate care, meaning it offered services that were less intensive than acute hospitalization and more intensive than outpatient therapy.

23.    Kelly O. selected Wingate because it offered treatment and services that supported teens struggling with behavioral health and substance abuse issues and its wilderness setting offered a more intensive level of psychotherapy that was not available in other inpatient care settings. Kelly O. also sought a setting away from B.O.'s home and school stressors and Wingate's wilderness environment gave B.O. the best chance of focusing on therapy and coping skills.

24.    Medical records from B.O.'s treatment, which Plaintiffs disclosed to Defendants through the claims and appeals process, showed that the services received from Wingate were medically necessary and could not have been provided in a less intensive setting.

25.    B.O.'s pediatricians, as well as other providers, concluded that Wingate was medically necessary and that Wingate's structure of weekly individual therapy, daily group therapy, and the development of skills of outdoor living increased B.O.'s sense of self-reliance that led to a decrease in suicidal ideation, anxiety, and depression, as well as drug use.

26.    Plaintiffs disclosed to Defendants through the claims and appeal process a compilation of Peer Reviewed Literature, attestations from several associations and clinical professionals that confirm that outdoor health programs like Wingate provided services that are proven to be effective and medically necessary to treat adolescents suffering from mental health and behavioral issues.

27.    For approximately three months, B.O. received mental health services at Wingate.

28.    While at Wingate, B.O. was under the care of, among others, a licensed therapist.

29.    B.O. was discharged from Wingate on July 5, 2023.

30.    Claims for B.O.'s treatment were submitted to Cigna for payment under the Plan.

31.     The Plan covers "services or supplies that are Medically Necessary for the care and treatment of an Injury or Sickness."

32.     The Plan defines Sickness to include the treatment of "mental illnesses."

33.     The Plan also covers "charges made on its own behalf, by any Other Health Care Facility, including a Skilled Nursing Facility, a rehabilitation Hospital or a subacute facility for medical care and treatment."

34.     The Plan defines "Other Health Care Facility/Other Health Professional" as:

[A] facility other than a Hospital or hospice facility.  Examples of Other Health Care Facilities include, but are not limited to, licensed skilled nursing facilities, rehabilitation Hospitals and subacute facilities.  The term Other Health Professionals means an individual other than a Physician who is licensed or otherwise authorized under the applicable state law to deliver medical services and supplies.  Other Health Professionals include, but are not limited to physical therapists, registered nurses, and licensed practical nurses. Other Health Professionals do not include providers such as Certified First Assistants, Certified Operating Room Technicians, Certified Surgical Assistants/Technicians, Licensed Certified Surgical Assistants/Technicians, Licensed Surgical Assistants, Orthopedic Physician Assistants and Surgical First Assistants.

35.     The Plan also covers Mental Health Services, which are defined as services that "are required to treat a disorder that impairs the behavior, emotional reaction, or thought process."

36.     The Plan contains a section entitled "Mental Health Residential Center" and defines such center as:

[A]n institution which specializes in the treatment of psychological and social disturbances that are the result of Mental Health conditions; provides a subacute, structured, psychotherapeutic treatment program, under the supervision of Physicians; provides 24-hour care, in which a person lives in an open setting; and is licensed in accordance with the laws of the appropriate legally authorized agency as a residential treatment center.

A person is considered confined in a Mental Health Residential Treatment Center when she/he is a registered bed patient in a Mental Health Residential Treatment Center upon the recommendation of a Physician.

37. Through Explanation of Benefits ("EOBs") Plaintiffs received from Cigna dated between July 19, 2023 and July 28, 2023, Cigna denied payment for claims for B.O.'s treatment at Wingate totaling approximately $54,600.

**PLAINTIFF'S LEVEL ONE APPEAL**

38. On January 8, 2024, Plaintiffs submitted a Level One Member Appeal.

39. Plaintiffs reminded Cigna/the Plan of their responsibilities under ERISA, including to "provide for a review that takes into account all comments, documents, records, and other information submitted or considered in the initial benefits determination."

40. Plaintiffs reminded Cigna/the Plan that, under ERISA, the notification is required to set forth, in a manner calculated to be understood by the claimant, the following information:

(i) The specific reasons or reasons for the adverse determination.

(ii) Reference to the specific plan provision on which the determination is based, and

(iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such information is necessary.

41. Plaintiffs requested "a physical copy of any and all documentation related to both the initial determination and the level one appeal determination including the reviewer's name, credentials, experience, and case notes or report."

42. The EOBs denying coverage for Wingate did not cite the criteria used in Cigna's adverse determination.

43. The "claim notes" on the EOBs denials referenced "A0 Your plan benefits do not provide coverage for miscellaneous items, as noted in your plan booklet."

44. Plaintiffs explained that they searched their plan booklet for a definition or section regarding "miscellaneous items" but could not find any such definition or section in the Plan.

45.     Plaintiffs further pointed out that the Plan's definition of "Other Health Care Facility" expressly states that covered facilities include, but are not limited to, licensed skilled nursing facilities. Plaintiffs observed that Wingate provided a comparable level of subacute, residential care and therefore falls squarely within the scope of covered facilities.

46.     After reviewing the Plan's sections on "Exclusions and Expenses Not Covered," Plaintiffs found the following limitations for services that are considered "experimental, investigational, and unproven:"

> for or in connection with experimental, investigational or unproven services. Experimental, investigational and unproven services are medical, surgical, diagnostic, psychiatric, substance use disorder or other health care technologies, supplies, treatments, procedures, drug or Biologic therapies or devices that are determined by the utilization review Physician to be:
> - not approved by the U.S. Food and Drug Administration (FDA) or other appropriate regulatory agency to be lawfully marketed;
> - not demonstrated, through existing peer-reviewed, evidence-based, scientific literature to be safe and effective for treating or diagnosing the condition or Sickness for which its use is proposed;
> - the subject of review or approval by an Institutional Review Board for the proposed use except as provided in the "Clinical Trials" sections of this plan; or

47.     Plaintiffs pointed out in their appeal that B.O.'s treatment at Wingate did not meet this description and therefore did not fit within the Plan's exclusion of experimental services.

48.     B.O.'s treatment did not fit within the first bulleted exclusion because the U.S. Food and Drug Administration (FDA) does not provide approval of healthcare facilities or health care providers.

49.     B.O.'s treatment did not fit within the second bulleted exclusion because Wingate was a 24/7 outdoor behavioral health treatment facility that was duly licensed by the state of Utah. Additionally, Plaintiffs provided Cigna a compilation of Peer Reviewed Literature demonstrating

that intermediate outdoor behavioral health treatment like that provided at Wingate had been proven to be safe and effective for the treatment of mental health illnesses.

50.     B.O.'s treatment did not fit within the third bulleted exclusion for experimental treatment because that provision was inapplicable. The Institutional Review Board ("IRB") is a group that has been formally designated to review and monitor biomedical research involving human subjects under federal regulations. The IRB has the authority to approve, require modifications in, or disprove research. Nothing in the IRB's purview, then, was applicable to the Plaintiffs' claims. Additionally, the services Wingate provided to B.O. were not clinical trials.

51.     Plaintiffs further explained in the first appeal that in their research for their appeal, they came across Cigna's complementary and alternative medicine policy, which is also called unconventional, nonconventional, or nontraditional healthcare, and found that Cigna includes "wilderness therapy" and "outdoor youth programs" in the "Mind-body medicine" category.

52.     Plaintiffs observed that Wingate's treatment does not fit within that category as Wingate is a 24/7 outdoor behavioral treatment facility that is duly licensed by the state of Utah to provide outdoor behavioral health services to adolescents as required by the governing Utah state regulations.

53.     In    reviewing    the    "Coding    Information"    for    services    considered "Experimental/Investigational/Unproven," Plaintiffs found that all of the codes listed are CPT and HCPCS codes, which do not apply to outdoor behavioral health services.

54.     Billing code 1006 is the revenue code that was used to bill Plaintiffs' claims, and that code does not appear on Cigna's coding information for "Experimental/Investigational Unproven" services.

55.     The National Uniform Billing Committee (NUBC) established revenue code 1006 for outdoor behavioral health programs, formally recognizing that outdoor behavioral health programs offer a generally accepted level of care comparable to other intermediate residential facilities.  The establishment of the outdoor behavioral health billing code was only approved after the NUBC conducted an extensive review of these types of programs, their licenses, their state regulation, insurance carrier payments, and peer-reviewed medical literature.

56.     Plaintiffs also expressed concern that Cigna/the Plan might be applying inequitable treatment limitations of the kind prohibited by the Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA). Among other things, Plaintiffs noted that, because the Plan is offered in compliance with the Patient Protection and Affordable Care Act (PPACA), it is therefore subject to MHPAEA, which requires the Plan to provide and administer benefits for behavioral health conditions in a way comparable to the administration of benefits for medical conditions.

57.     Plaintiffs stated that these obligations extend to those acting on the Plan's behalf, including the claims administrator, Cigna, as the Plan provides coverage for the treatment of behavioral health conditions and medical/surgical conditions.

58.     Plaintiffs also stated that Cigna is obligated to administer these benefits in parity with one another.

59.     Plaintiffs also indicated that since the Plan includes Mental Health and Substance Use benefits, coverage must be treated the same as for analogous medical benefits.

60.     Plaintiffs requested that Cigna's review include a parity analysis to determine whether it was truly being administered in compliance with the MHPAEA.

61.     Wingate qualified as an intermediate behavioral health facility under the MHPAEA.

62.     Wingate provided services that are less intensive than acute hospitalization and more intensive than outpatient therapy.

63.     The services comparable to B.O.'s intermediate treatment at Wingate were skilled nursing services, subacute facilities, etc.

64.     Despite the large compilation of Peer Reviewed Articles, along with other proof, submitted to Cigna demonstrating the efficacy and safety of Outdoor Behavioral Health, in a letter dated January 26, 2024, Cigna denied Plaintiffs claims. Cigna claimed that "there is insufficient scientific evidence to demonstrate the safety and clinical effectiveness of Wilderness Therapy Program for Children Adolescents" and the "quality and quantity of data in the current peer reviewed scientific medical literature is inadequate to establish the clinical, utility, safety and efficacy of this treatment for your diagnosis." The denial letter further stated that "at the present time—Complementary and Alternative Medicine (EN0086), this treatment falls under the category of experimental/investigational/unproven."

## PLAINTIFF'S LEVEL TWO APPEAL

65.     Plaintiffs filed a Level Two Member Appeal with Cigna by correspondence dated April 24, 2024.

66.     In their Level Two Member Appeal, Plaintiffs asserted that Cigna was not complying with its requirements under ERISA in that it had changed and was stacking rationales for denying benefits. In its original denial, Cigna asserted that it was denying coverage because B.O.'s treatment at Wingate amounted to a "miscellaneous item" as set forth in the Plan. In denying Plaintiff's Level One Member Appeal, however, Cigna asserted that it essentially maintained an internal policy of denying any program Cigan labelled as "Wilderness Therapy for adolescents" as being experimental.

67.     The Complementary and Alternative Medicine Policy, while providing a definition of "Wilderness Therapy," expressly acknowledged that there is a wide variation among programs, ranging from those with structured clinically supervised approaches to those that resemble military-style boot camps. This range of programs subject to the policy underscored that under Cigna's definition, "wilderness therapy" was not a uniformly or consistently clinical form of treatment.

68.     Cigna's denial did not address the specific services provided to B.O. at Wingate or meaningfully evaluate the over 900 pages of peer-reviewed literature Plaintiffs submitted in the first level appeal in relation to the efficacy of outdoor behavioral services like those B.O. received at Wingate. Instead, Cigna broadly categorized the treatment provided at Wingate as "wilderness therapy," despite the fact that under its own definition, programs that Cigna considered "wilderness therapy" to encompass a wide range of programs with significant variation in structure, clinical involvement, and therapeutic approach. The services provided at Wingate were not generic wilderness programming equivalent to boot camps, but rather structured, clinically supervised mental health treatment provided in an outdoor setting.

69.     Plaintiffs' second level appeal again requested that Cigna enter into a meaningful dialogue with them regarding the Peer Review articles submitted regarding the safety and efficacy of outdoor behavioral health programs like Wingate.

70.     Plaintiffs' second level appeal also pointed out that Cigna failed to provide a parity analysis demonstrating that the Plan was being administered in accordance with the MHPAEA, thereby depriving Plaintiffs of the ability to conduct an independent parity analysis themselves.

71.     In addition to the evidence they previously provided, Plaintiffs attached sixty-two redacted attestation letters, from clinical professionals across the country who affirm that the level

of care provided by outdoor behavioral health programs like Wingate was consistent with generally accepted standards of care, along with a letter from a therapeutic consultant and B.O.'s pediatrician, who also concluded that the treatment at Wingate was appropriate and necessary.

72.    Cigna again denied Plaintiffs' claims.

73.    Cigna's denial of Plaintiffs' second level appeal was essentially a reiteration of its previous denial, stating:

> Based upon current available information, coverage for the requested services provided by Wingate cannot be approved there is insufficient scientific evidence to demonstrate the safety and clinical effectiveness of Wilderness Therapy Program for Children and Adolescents. The quality and quantity of data in the current peer-reviewed scientific medical literature is inadequate to establish the clinical utility, safety and efficacy of this treatment/procedure for your diagnosis. At the present time, per Evernorth Behavioral Health Coverage Policy—Complementary and Alternative Medicine (EN 0086), this treatment falls under the category of experimental investigational/unproven. Your benefit plan does not cover experimental/investigational/unproven services.

74.    The denial letter did not engage in any of the information regarding the numerous Peer Review articles cited, or the myriad of other information Plaintiff provided that demonstrated that the treatment that B.O. received at Wingate was not investigatory, experimental, or unproven.

75.    Cigna also again failed to provide the parity analysis the Plaintiffs again requested.

76.    The letter stated, "this decision represents the final step of the internal appeal process."

77.    After receiving the denial of their second level appeal, litigation was Plaintiffs' only option to enforce their rights to benefits owing under the Plan and to seek reimbursement of expenses under the terms of the Plan (as written or reformed as required by the MHPAEA), and/or under the MHPAEA amendments to ERISA.

78.    Plaintiffs thereafter retained the undersigned to pursue their rights and remedies under ERISA.

79.     The remedies Plaintiffs seek herein are for the benefits due and pursuant to 29 U.S.C. § 1132(a)(1)(B), and in the alternative for appropriate equitable relief under 29 U.S.C. § 1132(a)(3) based on the Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008, as well as for pre-judgment interest and recoverable fees. Plaintiffs do not seek double recovery.

### FIRST CAUSE OF ACTION
**(Claim for Recovery of Benefits Under 29 U.S.C. § 1132(a)(1)(B))**

80.     All allegations of this Complaint are incorporated here as though fully set forth herein.

81.     ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as, acting as agent of the Plan, to "discharge [its] duties in respect to claims processing solely in the interests of the participants and beneficiaries" of the Plan. 29 U.S.C. § 1104(a)(1).

82.     Defendants wrongly excluded coverage for B.O.'s treatment at Wingate in violation of the terms of the Plan, which promise benefits to employees and their dependents for medically necessary treatment of mental health and substance use disorders. (As noted above, Cigna and the Plan have not challenged that B.O.'s treatment was medically necessary.)

83.     ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with Plaintiffs in the pre-litigation appeal process.

84.     The Denial Letters demonstrate the absence of a meaningful analysis of Plaintiffs' appeal. Among other things, Cigna/the Plan did not engage with or respond to the issues presented in the appeal and did not meaningfully address the arguments or concerns raised during the appeal process.

85.     Cigna/the Plan breached their fiduciary duties to Plaintiffs when they failed to comply with their obligations under 29 U.S.C. § 1104 and 29 U.S.C. § 1133 to act solely in B.O.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of B.O.'s claims.

86.     The actions of Cigna and the Plan in denying payment for B.O.'s treatment are a violation of the terms of the Plan, as written and/or as reformed as required or permitted under ERISA.

87.     In the event their claim was denied, Plaintiffs requested physical copies of any and all documentation used in making that determination.

**SECOND CAUSE OF ACTION**
**(Violation of the MHPAEA Under 29 U.S.C. § 1132(a)(3))**

88.     All allegations of this Complaint are incorporated here as though fully set forth herein.

89.     The MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and the MHPAEA. The obligation to comply with both ERISA and the MHPAEA is part of Cigna/the Plan's fiduciary duties.

90.     Generally speaking, the MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

91.     The MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical/surgical benefits and makes illegal

separate treatment limitations that are applicable only to mental health or substance use disorder benefits. 29 U.S.C. § 1185a(a)(3)(A)(ii).

92.    Impermissible non-quantitative treatment limitations (NQTLs) under the MHPAEA include, but are not limited to, restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. § 2590.712(c)(4)(ii).

93.    Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for B.O.'s treatment included subacute inpatient treatment settings such as skilled nursing facilities, inpatient rehabilitation facilities, etc.

94.    Cigna and the Plan did not exclude coverage for medically necessary care of medical/surgical conditions based on geographic location, facility type, provider specialty, or other criteria in the manner that they excluded coverage of mental health and substance abuse treatment for B.O. at Wingate.

95.    Upon information and belief, Cigna/the Plan's denial of coverage also violated the MHPAEA in application or effect. Because Cigna/the Plan declined to produce the requested documents and materials requested by Plaintiffs, further discovery is needed to resolve this aspect of Plaintiffs' claims.

96.    Defendants violated 29 C.F.R. § 2590.712(c)(4)(i) because the terms of the Plan, as written or in operation, used processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied to, the processes, strategies, standards, or other factors used to limit coverage for medical/surgical treatment in the same classification.

97.     Plaintiffs expressly requested that Cigna perform a parity analysis of the Plan under the MHPAEA. Plaintiffs expressed serious concern that Cigna was violating the statute and asked for a response using specific and direct examples. Cigna failed or declined to perform this analysis, and failed or declined to even address the MHPAEA in its Denial Letter or EOBs.

98.     The violations of MHPAEA by Defendants are breaches of fiduciary duty and give Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. § 1132(a)(3) including, but not limited to:

(a)     A declaration that the actions of Defendants violate the MHPAEA;

(b)     An injunction ordering Defendants to cease violating the MHPAEA and requiring compliance with the statute;

(c)     An Order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by Defendants to interpret and apply the terms of the Plan to ensure compliance with the MHPAEA;

(d)     An Order requiring disgorgement of funds obtained or retained by Defendants as a result of their violations of the MHPAEA;

(e)     An Order requiring an accounting by Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of Defendants' violations of the MHPAEA;

(f)     An Order based on the equitable remedy of surcharge requiring Defendants to provide payment to Plaintiffs as make-whole relief for their loss;

(g)     An Order equitably estopping Defendants from denying Plaintiffs' claims in violation of the MHPAEA; and

(h)    An Order providing restitution from Defendants to Plaintiffs for their loss arising out of Defendants' violations of the MHPAEA and unjust enrichment.

99.    In addition, Plaintiffs are entitled to an award of pre-judgment interest and attorney fees and costs pursuant to 29 U.S.C. § 1132(g).

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs seek relief as follows:

1.    Judgment in the total amount Plaintiffs incurred for B.O.'s treatment at Wingate;

2.    Pre- and post-judgment interest to the date of payment;

3.    Appropriate equitable relief under 29 U.S.C. § 1132(a)(3) as outlined under Plaintiffs' Second Cause of Action;

4.    Recoverable fees and costs incurred pursuant to 29 U.S.C. § 1132(g); and

5.    For such further relief as the Court deems just and proper.

DATED this 8th day of April, 2026                Respectfully Submitted


                                            PLAINTIFF
                                            KELLY O. individually and on behalf of
                                            B.O., and B.O.

                        By:    */s/ Monte E. Frank*
                                            Monte E. Frank (ct13666)
                                            Pullman & Comley, LLC
                                            90 State House Square
                                            Hartford, CT  06103-3702
                                            Telephone 860 424 4300
                                            Facsimile 860 424 4370
                                            E-mail:  mfrank@pullcom.com
                                            Attorney for Plaintiff